**Jaime HERRERA, Petitioner–Appellant,**

**v.**

**Cecil DAVIS, Superintendent, Respondent–Appellee.**

**No. 02–2186.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2002.*

Decided Dec. 17, 2002.

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

**ORDER**

A prison disciplinary board found Indiana inmate Jaime Herrera guilty of

---

* After an examination of the briefs and the record, we have concluded that oral argument in unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

attempting to procure drugs and revoked 90 days of good-time credit. The board relied in part on a videotape of Herrera's alleged offense in finding him guilty, but denied Herrera access to the video because of security concerns. After exhausting his administrative remedies, Herrera filed a petition challenging the discipline under 28 U.S.C. § 2254, which the district court denied. On appeal Herrera argues that he should have had access to the video because it was exculpatory material and that "some impartial person" should have reviewed the video to verify its contents. Because Herrera's own representations about the content of the videotape demonstrate that it is not exculpatory, disclosure was not required and we affirm.

While monitoring by video a range at the Indiana State Prison in Michigan City, Correctional Officer B. Meekins noticed a "cadillac," a homemade string-and-paper device used to pull items placed within the paper between cells, on the floor of the range. He sent Correctional Officer P. Moore to confiscate the "cadillac." Moore stated in his conduct report that the string was being pulled from another offender's cell to Herrera's cell and that he was able to pick up the "cadillac" before it reached Herrera's cell. After testing revealed that the folded paper contained tobacco and marijuana, Herrera was charged with attempting to possess an unauthorized substance.

At his initial screening Herrera pleaded not guilty, claiming that the "cadillac" was not found in front of his cell. He also noted that guards had videotaped the alleged offense and requested to view the video. Although prison officials did not allow Herrera to watch the video, citing security concerns, the hearing report indicates that the disciplinary board did review the video and found Herrera guilty based on the video, the conduct report, and

witness statements. Herrera appealed, however, and the facility head remanded for a rehearing because Herrera had not been given a copy of the test results for the marijuana.

Before the rehearing, disciplinary board members Hayes and Cook made a written report of the video, noting that it showed Herrera transporting a "cadillac" on the range with the help of another offender. Herrera avers in his brief that another prison guard confided to him that the video was not inculpatory:

> Sergeant Carrasco confided to [me] that the videotape did not show [me] doing anything.... The stationary videocamera also recorded the backside of a very large, and very wide, prison guard, Officer Moore, walking down the 200 West range from the mounted camera, during which time nothing on the other side of the guard was visible to the camera. The videocamera recorded the officer picking up the string and its attached package, but nothing else. Upon viewing the videotape, it is absolutely impossible to discern where the string and package originated from or where it is destined for.

At the rehearing the three-member board, including Cook who had also served on the first disciplinary board, found Herrera guilty again. This time Herrera's administrative appeals were unsuccessful and this habeas corpus action followed.

Initially, the district court remanded the case to the prison system for reconsideration in light of our ruling in *Piggie v. McBride*, 277 F.3d 922 (7th Cir.2002) (vacating dismissal of § 2254 petition and remanding to determine whether prisoner had ever requested to have the disciplinary board view video of alleged offense and whether prison officials erased video). But after the state moved to reconsider, the court denied Herrera's petition, con-

cluding that *Piggie* did not apply to his case because his board had viewed the video and that Herrera did not have a right to view the video himself because of security concerns. The court never ruled on Herrera's motion to have the court inspect the video *in camera*.

Herrera asserts that prison officials violated his constitutional right of disclosure of exculpatory material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As Herrera correctly points out, the *Brady* rule applies in prison disciplinary proceedings, *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir.1981). But in this instance all of the members of the first board and two of the three members of the second board watched and considered the video, so Herrera cannot argue that evidence was improperly withheld from the factfinder. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir.2001). *Cf. Piggie*, 277 F.3d at 925. And as for Herrera having access to the videotape himself, we have noted that under *Brady*, disclosure is limited to situations which "would not create security issues," *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir.2000), *overruled on other grounds by White*, 266 F.3d at 765–66. Here, prison officials have consistently asserted that allowing Herrera to view the videotape would jeopardize prison safety by providing him with knowledge of prison security camera capabilities, patterns, and location, thus allowing him to avoid detection in the future. Moreover, disclosure under *Brady* is not required when "there is no reason to believe that the contents of the videotape [are] exculpatory." *Id.* Herrera himself insists that "it is absolutely impossible to discern [from the video] where the string and package originated from or where it is destined for." By his own account, then, the video is not exculpatory. Instead, rather than showing that the "cadillac" was destined for another inmate, the video is inconclusive at best about the sender and intended recipient, and inculpatory at worst, as the board found. Therefore, there was no *Brady* violation and no need for *in camera* review of the videotape.

We also note that Herrera challenges the impartiality of two of the disciplinary board members. As the state properly asserted, however, Herrera failed to develop this issue in his brief by not setting forth his contentions with the district court's ruling and the authority for his argument, thus falling short of the requirements of Fed. R.App. P. 28(a)(9)(A). Although Herrera is proceeding *pro se*, his failure to adequately develop the basis for his claim renders it waived. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

AFFIRMED.